T.C. Summary Opinion 2001-15


UNITED STATES TAX COURT


DANIELLE L. CLARK-HERNANDEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14928-98S.          Filed February 20, 2001.


<u>Douglas H. Frazer</u>, for petitioner.

<u>Christa A. Gruber</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies, additions to tax, and penalties with respect to petitioner's Federal income taxes:

| Year | Deficiency | Addition to Tax Section 6651(a) | Penalty Section 6662(a) |
|------|-----------|--------------------------------|------------------------|
| 1991 | $4,896 | $1,291.75 | $979.20 |
| 1992 | 4,029 | 633.75 | 805.80 |
| 1993 | 5,382 | — | 1,076.40 |

After concessions by petitioner,[1] the issues for decision are: (1) Whether petitioner is entitled to deduct certain Schedule C, Profit or Loss From Business, expenses in excess of amounts allowed by respondent for the years in issue; (2) whether petitioner is entitled to claim cost of goods sold for the

---

[1] At trial, petitioner conceded respondent's determination allowing 80 percent of the car and truck expenses for 1991, 1992, and 1993. As to the remaining 20 percent, petitioner's arguments will be discussed infra. Petitioner further conceded 90 percent of respondent's determination disallowing some utility expenses for 1991, 1992, and 1993. As to the remaining 10 percent, petitioner's arguments will be discussed infra.

The items and amounts listed below represent expenses disallowed by respondent that were not addressed by petitioner. As a result, petitioner is deemed to have conceded these items. See Rules 142(a), 149; Pearson v. Commissioner, T.C. Memo. 2000-160.

| Claimed Deduction | Amount | |
|-------------------|--------|--------|
| | 1991 | 1993 |
| Rent - Vehicle | — | $3,734 |
| Commissions | --- | 288 |
| Insurance | $46 | --- |

Respondent also determined that petitioner was entitled to additional depreciation deductions of $303 and $641 in 1992 and 1993, respectively. Petitioner is deemed to have conceded these items because she did not address these matters at trial. See Rules 142(a), 149; Pearson v. Commissioner, supra.

taxable years 1991 and 1992; (3) whether petitioner is liable for additions to tax for failure to timely file returns under section 6651(a) for the taxable years 1991 and 1992; and (4) whether petitioner is liable for accuracy-related penalties pursuant to section 6662(a) for the years in issue.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Milwaukee, Wisconsin.

A. Background

Petitioner graduated from Milwaukee Area Technical College (Technical College), a 2-year college. At the Technical College, petitioner studied business data processing and business management. After completing Technical College, petitioner worked in data processing. She also participated in classes provided by the Small Business Administration, including courses in basic accounting, management, and other skills related to small business. During the years in issue petitioner was not married.

B. History of Petitioner's Cleaning Business

Prior to 1987, petitioner operated a residential and office cleaning business called "Quest Cleaning" in Aurora, Colorado. Petitioner moved back to Milwaukee in 1987 and changed the name of the cleaning business to "Dustbusters Janitorial Services"

(Dustbusters).

Once back in Milwaukee, petitioner rented a one-room office from which she operated Dustbusters. Petitioner did not store any equipment or supplies at this location.

From 1987 through part of 1992, petitioner stored equipment and supplies in the basement of her mother's condominium. The storage space at Ms. Clark's condominium was approximately 8 feet by 13 feet with a back entrance providing for easy loading of cleaning materials and supplies. Petitioner sometimes gave her mother $250 per month or in lieu of monetary payment made improvements to the condominium, e.g., painting, decorating, and carpentry. During this time petitioner also resided with her mother until she moved into her own personal residence, a four-room apartment located at 1693 N. Cass Street (Cass St. address). The apartment building was owned by petitioner's grandmother. Petitioner stored supplies, equipment, and materials in a storage room she had built in the basement. Petitioner used water from her apartment to dilute cleaning chemicals.

Petitioner employed various people for different client accounts during the years in issue, including Richard Comeau, Ms. Sigrist, and Bill Reynolds (Mr. Reynolds). Ms. Sigrist and Mr. Reynolds each received a Form 1099 from Dustbusters representing amounts earned for cleaning services rendered during 1991. Petitioner's client accounts consisted of cleaning contracts for

a fixed time period, e.g., once a week for a year; cleaning contracts for the duration of a project, e.g., during the construction of a building; or one-time cleaning jobs. Petitioner averaged about 12 steady accounts from 1991 through 1992. The number of accounts, however, increased and decreased during the following years depending upon new accounts and one-time cleaning jobs.

Petitioner's clients were located in various areas including, but not limited to, Milwaukee, Brookfield, Waukesha, Mequon, Deansville, Madison, and Kenosha. At times, petitioner provided snacks, e.g., coffee, donuts, or sandwiches, to her employees in the office and at the job site. It was not uncommon for petitioner to work at multiple accounts during a single day. Petitioner traveled to each site, often returning to earlier locations to lock up the building or check the status of the work.

In 1992 and 1993, petitioner was employed by Oscar J. Boldt Construction Co. (Oscar Boldt) for the Milwaukee County Jail project (jail project) in addition to operating Dustbusters. Petitioner worked from 7 a.m. to 3:30 p.m. at her job with Oscar Boldt, and then on a Dustbusters' contract at the same jail project after 3:30 p.m. If petitioner had other accounts she would attend to them before or after the jail project. Petitioner was laid off from the jail project in 1992; however,

she was retained as a subcontractor to clean offices. Oscar Boldt retained petitioner to work for a second project on North Avenue through 1993. Petitioner's Form W-2, Wage and Tax Statement, reflected wages of $10,754.59 and $11,413.76, for the taxable years 1992 and 1993, respectively.

Petitioner leased a Mazda pickup truck from Fleet Services from 1989 through 1993. Under the lease terms, petitioner was responsible for certain specified maintenance (as defined by the lease contract) and gasoline expenses. Mileage and other maintenance expenses were included in the lease contract payments.

Sometime before 1991, petitioner developed an interest in Japanese culture. Petitioner frequented a local Japanese restaurant and sushi bar called Izumi's. At times, petitioner ate both lunch and dinner, sometimes daily, at Izumi's. Through petitioner's interaction with other Izumi's patrons, petitioner acquired a few new cleaning customers, including GE and Star Automation. Petitioner often bought meals and gifts for her new Japanese acquaintances. She visited Japan in 1990, 1991, and 1994 to learn more about its language and culture, and to visit various companies for the purpose of obtaining new accounts. Petitioner took Japanese language classes in order to communicate with the Japanese contacts she met. Many of the Japanese business people petitioner met did not work for companies in the

Milwaukee area. Rather, they were representatives of Japanese companies located in Japan and San Francisco. Petitioner frequently called these acquaintances in Japan and developed friendships with them.

C. Maintenance of Petitioner's Business Records

Petitioner used binders or folders to collect receipts for various expenses. For instance, all cleaning expense receipts went into one folder, and all meal receipts went into another folder. At the end of the year, petitioner gathered all her receipts for a given category or expenditure, ran a tape total, wrote the total on a piece of paper, and entered the tape total amount on a line on the Schedule C that closely related to the expense. Expenses were paid through a business checking account, petitioner's personal checking account, and petitioner's personal credit card. Petitioner also kept track of receipts paid by "petty cash". All categorization of business expenses was made at the time petitioner placed the receipts into the respective folder.

Petitioner prepared her Federal income tax returns for the years in issue. She did not seek or obtain advice from a professional tax preparer or anyone else relative to the accounting or bookkeeping of her business.

On Schedules C attached to her 1991, 1992, and 1993 Federal income tax returns, petitioner reported gross receipts of

$50,407, $36,560, and $37,246, respectively.  Petitioner reported a net Schedule C profit of $1,915 for 1991, a loss of $11,939 for 1992, and a loss of $15,610 for 1993.

## D.  Respondent's Determination

Respondent issued a notice of deficiency and made the following adjustments to Schedule C deductions by petitioner:

| | 1991 | | | 1992 | | | 1993 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed |
| Advert. | $210 | $210 | 0 | $948 | $948 | 0 | $975 | $975 | 0 |
| Car and truck | 7,709 | 5,462 | 2,247 | 7,865 | 4,020 | 3,845 | 2,249 | 4,244 | (1,995) |
| Commission | -- | -- | -- | -- | -- | -- | 288 | 0 | 288 |
| Insurance | 408 | 362 | 46 | 1,104 | 1,104 | 0 | 1,935 | 2,034 | (99) |
| Legal and prof. serv. | 696 | 696 | 0 | 898 | 898 | 0 | 407 | 407 | 0 |
| Office expense | 4,829 | 2,758 | 2,071 | 8,535 | 2,195 | 6,340 | 9,308 | 1,451 | 7,857 |
| Rent - Vehicle | -- | -- | -- | -- | -- | -- | 3,734 | 0 | 3,734 |
| Rent - Other | 1,620 | 1,700 | (80) | 4,375 | 1,200 | 3,175 | 6,900 | 1,200 | 5,700 |
| Taxes | 6 | 6 | 0 | 12 | 12 | 0 | 5 | 5 | 0 |
| Travel | 1,619 | 311 | 1,308 | 392 | 392 | 0 | 645 | 645 | 0 |
| Meals/Ent. | 8,964 | 1,000 | 7,964 | 6,677 | 1,000 | 5,677 | 7,252 | 1,000 | 6,252 |
| Utilities | 3,341 | 1,553 | 1,788 | 2,864 | 1,564 | 1,300 | 3,724 | 1,220 | 2,504 |
| Wages | 600 | 0 | 600 | 4,583 | 4,583 | 0 | 2,085 | 2,085 | 0 |
| Donations | 600 | 0 | 600 | 100 | 0 | 100 | -- | -- | -- |
| Payroll | 1,015 | 1,015 | 0 | 1,040 | 1,049 | (9) | 222 | 249 | (27) |
| Gifts | 640 | 205 | 435 | 683 | 142 | 541 | 2,643 | 25 | 2,618 |
| Cleaning Supplies | 949 | 0 | 949 | -- | -- | -- | 7,337 | 3,359 | 3,978 |
| Outside Services | -- | - | - | -- | -- | -- | 1,487 | 1,425 | 62 |
| Deprec. | -- | -- | -- | 0 | 303 | (303) | 0 | 641 | (641) |
| Repairs/ Maint. | -- | -- | -- | -- | -- | -- | 1,660 | 197 | 1,463 |
| Total | 33,206 | 15,278 | 17,928 | 40,076 | 19,410 | 20,666 | 52,856 | 21,162 | 31,694 |

**Cost of Goods Sold**

| | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed |
|---|---|---|---|---|---|---|---|---|---|
| Cost of Labor | 8,838 | 8,838 | 0 | 1,696 | 1,527 | 169 | -- | -- | -- |
| Material/ Supplies | 6,448 | 4,932 | 1,516 | 6,702 | 3,827 | 2,875 | -- | -- | -- |
| Available | 15,286 | 13,770 | 1,516 | 8,398 | 5,354 | 3,044 | -- | -- | -- |

Also, for 1991, 1992, and 1993, respondent allowed petitioner adjusted deductions of $1,373, $832, and $1,137,

respectively, for one-half of the self-employment tax due.

Respondent disallowed deductions in the amounts shown above because they were not ordinary and necessary and were not incurred in carrying on a trade or business. Further, respondent determined that petitioner failed to maintain adequate records, failed to substantiate the claimed deductions, and untimely filed her returns. We agree with respondent.

E. Schedule C Expense Deductions

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving the entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business. To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. Du Pont, 308 U.S. 488, 495 (1940). No deduction is allowed for personal, living, or family expenses.

See sec. 262(a).

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it, the Court is permitted to make as close an approximation as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The estimate must have a reasonable evidentiary basis. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274 supersedes the doctrine in Cohan v. Commissioner, supra, see sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), and requires strict substantiation of expenses for travel, meals and entertainment, and gifts, and with respect to any listed property as defined in section 280F(d)(4), see sec. 274(d). Listed property includes any passenger automobile or any other property used as a means of transportation. See sec. 280F(d)(4)(A)(i) and (ii).

A taxpayer is required by section 274(d) to substantiate a claimed expense by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the amount, time, place, and business purpose of the expense. See sec. 274(d). Even if such an expense would otherwise be deductible, the deduction may still be denied if there is insufficient substantiation to support it. See sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

1.  Travel

Respondent disallowed $1,308 of petitioner's 1991 travel expense deduction for failure to substantiate the amounts by the necessary records.

The amount of business travel must be substantiated "by the use of a contemporaneous log of business travel, or by any reasonable means establishing the number of miles traveled, the date, the place, and the business purpose of such miles". Kravette v. Commissioner, T.C. Memo. 1987-124 (citing Smith v. Commissioner, 80 T.C. 1165, 1171-1173 (1983)); see also sec. 1.274-5T(a)(1), Temporary Income Tax Regs., supra.

Petitioner testified that she traveled to Brookfield, Wisconsin, for a seminar but failed to provide the location and title of the seminar and an explanation of how the seminar was related to her business.  Petitioner also traveled to Boston with her fiancé to visit a cousin who was purportedly interested in opening a franchise of Dustbusters.  Finally, petitioner provided a Budgetel Inn invoice for an overnight stay without a disclosed location and purpose.  Besides being unable to substantiate the amount claimed on petitioner's Schedule C by the receipts provided, petitioner failed to submit any evidence of a contemporaneous notation showing how the expenses were reasonable and necessary in the pursuit of her business.  At trial, petitioner testified to the business purpose of the travel

expenses for the receipts as noted above.  It is well settled, however, that we are not required to accept a taxpayer's self-serving testimony in the absence of corroborating evidence.  See Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992).

Respondent is sustained on this issue.

2.  Meals and Entertainment

Petitioner deducted meals and entertainment expenses in 1991, 1992, and 1993, respectively, of $8,964, $6,677, and $7,252.  Respondent allowed $1,000 for each respective year.

The record reflects that petitioner deducted the costs of personal meals she had with her fiancé under the guise of "management meetings".  Petitioner testified that she had barbecues or cookouts for suppliers, vendors, and employees.  She also cooked meals at home and served them to employees at the work site.  Petitioner had receipts reflecting a birthday dinner for her fiancé where one other employee may have attended; thus, according to petitioner, it qualified as a business-related meal. She had multiple receipts for purchases made at local grocery stores and fast food restaurants when she was "out of the area".

Entertainment included baseball tickets to Brewers baseball games for employees, theater tickets, and tickets to the Milwaukee Zoo for her Japanese acquaintances.  However, similar to the meals expenses, petitioner has failed to follow the strict substantiation rules of section 274(d).

Petitioner failed to produce documentation or corroborative evidence to comply with the strict substantiation requirements of section 274(d); therefore, petitioner is not entitled to deductions for meals and entertainment expenses in excess of the amounts allowed by respondent for 1991, 1992, and 1993. Petitioner did not contemporaneously annotate receipts indicating the place, date, amount, and business purpose of the meal.  At the request of Revenue Agent Valerie Schwartz (Ms. Schwartz), petitioner provided a list identifying the date, place, amount, business relationship, business purpose, and resulting sales, if any, for the meals and entertainment expenses.  The list was created in 1996 for Ms. Schwartz during petitioner's examination. Although petitioner claims that similar worksheets were created for all the years in issue, only the 1992 worksheet was provided. We question petitioner's ability to remember such minute details over as much as a 5-year time period for hundreds of meals and entertainment engagements.  Not only does petitioner fail to follow the strict substantiation requirements, the Court has the discretion to disregard testimony which we find self-serving. See Niedringhaus v. Commissioner, supra at 212.

Respondent is sustained on this issue.

3.  Gifts

Petitioner claimed a deduction for business gifts of $640, $683, and $2,643 in 1991, 1992, and 1993, respectively.

Respondent allowed $205, $142, and $25, respectively.

Petitioner's receipts submitted during trial substantiate the following amounts: $0 for 1991, $120.62 for 1992, and $0 for 1993. As a threshold issue, petitioner failed to substantiate the amounts of the claimed deductions. Next, petitioner testified at trial that some of the "business gifts" included personal gifts to her mother. Petitioner has the burden to show how a business gift was "ordinary and necessary" to her business and that it was made with the reasonable expectation of a commensurate financial return. Petitioner has not met this burden.

The scanty documentary evidence, in conjunction with petitioner's own statements, does not constitute the adequate records and substantiating documentation as required by the statute and regulations. See Sanford v. Commissioner, 50 T.C. 823 (1968), affd. 412 F.2d 201 (2d Cir. 1969). Accordingly, we sustain respondent's determination with respect to this issue.

## 4. Car and Truck Expenses

At trial, petitioner conceded respondent's determination that 80 percent of petitioner's truck expenses in 1991[2] were for business purposes. For the taxable year 1991, petitioner

---

[2] The parties agree that the arguments for 1991 apply to 1992 and 1993, and, therefore, our analysis will have the same effect on all the years in issue.

deducted $7,709 in car and truck expenses, of which only $6,648 was substantiated. Respondent allowed $5,318.40 per examination, which is 80 percent of the amount substantiated. Petitioner contends that she conceded 80 percent of the claimed $7,709 truck expense, and that respondent further reduced petitioner's truck expense by making adjustments for commuting. Respondent argues that local transportation expenses were included in the 80 percent and petitioner's further arguments regarding commuting are misplaced. We agree with respondent.

Petitioner agreed to the 80/20 division between business and personal use of her vehicle. Only $6,648 was substantiated which respondent used as the base for the 80-percent calculation. Petitioner offered no evidence to support any additional transportation expenses in excess of respondent's allowed car and truck expenses for the years in issue. She did not keep a daily log or a diary of places traveled to during any of the years in issue. While she kept a calendar or a "rough little pad of paper, or whatever, that told me where I was going to go", she did not write down the distance to her regular accounts or "regular goings to pick up supplies". Although we find that petitioner traveled from one job location to the next as was needed, petitioner failed to comply with the strict requirements of the statute.

Respondent is sustained on this issue.

5. Office Expenses

Petitioner deducted office expenses of $4,829, $8,535, and $9,308 in 1991, 1992, and 1993, respectively. Respondent allowed $2,758, $2,195, and $1,451, respectively.

At trial, however, petitioner produced a melange of receipts that did not substantiate her claimed office expense deductions. Petitioner attempted to substantiate the claimed office expenses by submitting check receipts and canceled checks drawn on Dustbusters checking account and petitioner's personal checking account, and credit card statements. Of the receipts presented, petitioner testified that she counted only items on the receipts that were related to her office. In arguing that the expenses were personal in nature rather than related to petitioner's business, respondent notes that the receipts included amounts for union dues associated with her W-2 jobs, Audubon print books, snacks for the office, medication, vodka and wine, kitchenware, dance/exercise clothing, Guess brand apparel, floral arrangements, groceries, hair accessories, blankets, pillows, and wallpaper. In some instances, receipts were duplicated in the same year or in subsequent years. Notations, if any, on the checks submitted were vague. In addition, some checks were simply made out to "cash" with no notation on the bottom that it was for a deductible business expense.

Finally, on brief petitioner cites to "Treas. Reg.

1.262(f)(2)(ii)" for the proposition that food and beverages furnished on the taxpayer's business premises are deductible and not subject to the limitation on deductions. Apparently, petitioner was referring to section 1.274-2(f)(2)(ii), Income Tax Regs. However, this regulation does not assist petitioner's position as she failed to substantiate the deductions.

It is clear from the evidence submitted and the testimony provided during trial that petitioner failed to substantiate in any coherent manner expenditures she considered as office expenses. On the basis of the record, we hold that petitioner is not entitled to deduct office expenses in excess of respondent's allowed office expenses for the years in issue.

### 6. Rent - Other Expenses

Petitioner deducted rent expenses of $1,620, $4,375, and $6,900 in 1991, 1992, and 1993, respectively. Respondent allowed $1,700, $1,200, and $1,200, respectively. Petitioner contends that the disallowed rental expenses associated with storage space at her mother's home and the Cass St. address are deductible.

Section 280A generally prohibits deductions of otherwise allowable expenses with respect to the use of an individual taxpayer's home. This prohibition, however, does not apply to space allocable within a "dwelling unit which is used on a regular basis as a storage unit for the inventory or product samples of the taxpayer held for use in the taxpayer's trade or

business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business." Sec. 280A(c)(2).

For 1992, petitioner deducted expenses for office rent which respondent fully allowed. However, petitioner contends that she is entitled to "home office" and storage expenses. We disagree. We find petitioner's testimony conflicting and confusing, and her position unjustifiable. She testified that a portion of her home was used during the time "when I first started" Dustbusters. However, she also testified that she began Dustbusters in 1987 and utilized office space rented at 7856 West Appleton Avenue since 1987.

The record also reflects that petitioner deducted monthly rent paid to her mother and grandmother as alleged rental costs for storage space. At trial, Ms. Clark testified that the $250 rent that petitioner sometimes paid was "to help out with everything". Petitioner also admitted that rental payments made to her grandmother were for her personal residence, thus nondeductible.

In this case, petitioner does not fit within the exception of section 280A(c)(2) because she had a fixed place of business at 7856 West Appleton Avenue during the same time period that she is claiming deductions for home office expenses. The storage areas in issue were located at petitioner's various personal

residences.  The exception clearly applies in situations where the dwelling unit is the sole fixed location of the trade or business.  Because petitioner had an office, her fixed place of business, other than her residences, section 280A(c)(2) does not apply.  See Garvey v. Commissioner, T.C. Memo. 1982-176. Moreover, petitioner's equipment and supplies for her cleaning business do not constitute inventory, as required under the statute.  See Banatwala v. Commissioner, T.C. Memo. 1992-483.

Accordingly, petitioner failed to establish that she is entitled to deduct additional rents in excess of the amounts respondent allowed.  Respondent is sustained on this issue.

7.  Utilities

Petitioner claimed utility expense deductions of $3,341, $2,864, and $3,724 in 1991, 1992, and 1993, respectively. Respondent allowed $1,553, $1,564, and $1,220, respectively.  At trial, petitioner agreed to 90 percent of respondent's adjustments.  Petitioner admits that personal utility expenses were incorrectly deducted in 1991, 1992, and 1993.  However, she continues to contend that she is entitled to 10 percent of the disallowed utility expense deductions.  It was also determined that in 1991, yellow page advertisements charged to petitioner's telephone bills, were already included in petitioner's claimed utility expenses for that year, and no additional amount was

warranted.[3]

Business related telephone calls were made from petitioner's office, her mother's home (in 1991 and part of 1992), and the Cass St. address from September 1992 through 1993. Petitioner did not identify which phone calls were personal or business related. Petitioner testified that she "just put it in the computer. I was thinking it was kind of done in the system". Petitioner also deducted the electricity at the Cass St. address for the washer and dryer and charging of equipment. Petitioner provided copies of her home telephone bills without any indication of which calls were personal or business related and copies of her business phone bills with missing monthly statements.

Petitioner further contends that water, electricity, and gas expenses were incurred in the ordinary course of business. Heaters kept equipment and supplies warm, water was used to mix chemicals, and the washer and dryer were used to launder dirty towels and clothing.

Although it is within the purview of the Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, Cohan v. Commissioner, 39 F.2d at 543-544, we cannot do so when there is no reliable evidence on

---

[3]     Petitioner attempted to claim the yellow page advertisements as an additional expense for the years in issue, in addition to the amounts previously claimed.

which to make such estimations. See <u>Vanicek v. Commissioner</u>, 85 T.C. at 742-743. For 1991 and 1992, petitioner provided one utility bill. For 1993, petitioner provided copies of Wisconsin Electric, Wisconsin Gas, and Milwaukee Water Works bills for her personal residence which we hold are nondeductible personal expenses.

Based on the above, we find that petitioner failed to establish that utility expense deductions in excess of the amounts allowed by respondent were ordinary and necessary business expenses. Respondent is sustained on this issue.

8. <u>Donations</u>

Petitioner deducted donations of $600 and $100 in 1991 and 1992, respectively. Respondent disallowed the deductions in full for both years.

Petitioner testified that donations included items which she labeled "gifts/donation" in 1991 and "promos" in 1992. Petitioner further testified that "promos" or "promotions" included "perks for employees" and other items as a work incentive. Petitioner's receipts under "promos" for 1992 included several items of jewelry, wallpaper, interior paint, an ironing board, gourmet foods, candy, and perfume totaling $457.90. Petitioner's 1991 receipts totaled $104.17, which is far from the claimed deduction of $600.

Not only has petitioner failed to substantiate specific

donations pursuant to section 1.170A-13(a)(1), Income Tax Regs., but she also testified that the wallpaper, interior paint, and ironing board were given to her mother, which items thus are personal and nondeductible. Consequently, respondent's determination is sustained.

### 9. Repairs/Maintenance

Petitioner deducted $1,660 for repairs and maintenance in 1993. Of that amount, respondent allowed $197. Petitioner testified that all of the personal checks written to Tony Lloyd, Interior/Exterior Decorating Specialists, totaling $849, are for remodeling her mother's residence. Since this remodeling is personal in nature, the expenses are not deductible. Petitioner argues that the repairs were made in lieu of rent to her mother. If that were the case, petitioner would have included these amounts under storage expenses. In any event, we have already determined that the amounts deducted as rent were for petitioner's habitation as opposed to storage use, and thus were personal in nature.

Since petitioner has not provided any other evidence for repairs or maintenance, she is not entitled to any deduction in excess of respondent's determination.

### F. Cost of Goods Sold

#### 1. Wages/Payroll/Outside Services/Cost of Labor

During the years in issue, petitioner used four different

categories to report labor expenses.

For 1991, respondent disallowed a claimed deduction for wages of $600 and allowed petitioner's claimed payroll expense deduction of $1,015 and cost of labor, as a cost of goods sold, of $8,838 in full. As to years 1992 and 1993, respondent allowed, in full, claimed deductions for wages of $4,583 and $2,085, respectively. In addition to allowing petitioner's claimed payroll deductions for years 1992 and 1993, respondent credited petitioner an additional $9 and $27, respectively. Respondent, however, disallowed $169 of petitioner's claimed cost of labor, as a cost of goods sold, for 1992. For 1993, respondent disallowed $62 of petitioner's claimed outside services expense deduction.

Reasonable compensation for services actually rendered is deductible under section 162 as an ordinary and necessary business expense. See sec. 162(a)(1). It is unclear why petitioner separated payments made to employees into four separate categories; nevertheless, we discuss them together as they clearly refer to payments petitioner made as compensation for services rendered.

It is respondent's position that petitioner has duplicated her 1991 wages expense in amounts previously allowed by respondent under payroll and cost of labor. Petitioner offered the testimony of Ms. Sigrist and Ms. Comeau to prove that the

amounts of their compensation were not included under payroll expense or cost of labor. Respondent argues that the amount shown in the Form 1099 Ms. Sigrist received was already included under cost of labor. Petitioner offered no evidence to substantiate the 1992 cost of labor deductions.

Petitioner has the burden to substantiate the claimed labor expenses. See Rule 142. She has failed to do so. Petitioner submitted receipts which do not appear to concern wages, payroll, outside services, or cost of labor categories. The few receipts submitted do not approach the amounts claimed on petitioner's returns and only add to the confusion. Contrary to petitioner's argument, the witnesses at trial could not corroborate who worked on which project and whether the respective witness ever received payment for services rendered.

Respondent is sustained on this issue.

2. Cleaning Supplies/Materials and Supplies (Cost of Goods Sold)

Respondent disallowed deductions for cleaning supplies expenses of $949 and $3,978 for 1991 and 1993, respectively. Respondent further disallowed materials and supplies, as a cost of goods sold, of $1,516 and $2,875 for 1991 and 1992, respectively. Respondent contends that petitioner claimed amounts for personal items in addition to business supplies. Petitioner contends that only expenses for cleaning supplies from

wholesale suppliers were allowed while those from retail merchants, e.g., Target and Walgreens, were disallowed.

While we accept petitioner's testimony that she purchased supplies at retail establishments for convenience, it is unclear whether petitioner excluded personal items contemporaneously purchased with business supplies and materials. After review of the record, it is evident that petitioner could not substantiate the amount of expenses which respondent allowed for the years in issue. It is petitioner's burden to present evidence to the Court proving the necessity of each item in the ordinary course of business. The Court again finds that petitioner's receipts are in such a disarray that the amounts respondent had previously allowed were not discernable. Based upon the above, we find that petitioner is not entitled to deductions or cost of goods sold in excess of those which respondent has allowed.

G.  Section 6651(a)

Respondent determined additions to tax as a result of petitioner's failure to file timely returns for 1991 and 1992. Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return. The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. See sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues,

to a maximum of 25 percent of the tax.  See id.

The addition is applicable for each year unless petitioner establishes that her failure to file was due to reasonable cause and not willful neglect.  See id.  If petitioner exercised ordinary business care and prudence and was nonetheless unable to file her return within the date prescribed by law, then reasonable cause exists.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" means a "conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioner's 1991 Federal income tax return was due on April 15, 1992.  Petitioner filed a blank return with an application for extension on June 5, 1992.  Petitioner filed her 1991 and 1992 Federal income tax returns in June 1994.  She contends that the late filing of her 1992 return was a result of waiting for the completion of the 1991 return.

Petitioner has failed to show that she exercised ordinary business care and prudence in this case.  Respondent is sustained on this issue.

## H.  Section 6662(a)

The last issue for decision is whether petitioner is liable for accuracy-related penalties pursuant to section 6662(a) for the years in issue.  Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable

to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  Negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances'".  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. 43 T.C. 168 (1964) and T.C. Memo. 1964-299).  It includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  See sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment.  See sec. 6664(c).

At trial, petitioner failed to establish that she acted in good faith with respect to the underpayments during the years in issue.  Petitioner claimed excessive Schedule C expenses which she was unable to substantiate and disregarded the requirements of sections 162 and 274.  In the Court's opinion, neither the receipts submitted by petitioner nor her testimony established a business purpose for the claimed expenses.  On the basis of the record, we hold that petitioner is liable for the accuracy-related penalties under section 6662(a) for 1991, 1992, and 1993.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.